# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

#120410

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

**NOV 22 2019**

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| STEVEN B. AUBREY, Individually, | § | |
| STEVEN B. AUBREY, as Beneficiary | § | |
| of the AUBREY FAMILY TRUST, and | § | |
| BRIAN E. VODICKA, | § | |
| | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| THE ESTATE OF IRA TOBOLOWSKY, | § | |
| MICHAEL B. TOBOLOWSKY, FAITH | § | |
| G. BURK, STEPHEN SCHOETTMER, | § | **3 - 1 9 C V - 2 7 9 2 S** |
| DAVID P. HENDRICKS, ERIC V. | § | |
| MOYE, DONALD J. COSBY, RICHARD | § | |
| B. AUBREY, JR., BETSY S. AUBREY, | § | |
| RACHEL ANN CRAIG, ROBIN L. | § | |
| LANDIS, JACKIE K. WHEELINGTON, | § | |
| KENNETH ISAAC SIMMONS, and | § | |
| JANE DOE. | § | |
| | § | |
| *Defendants.* | § | |

---

## COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs STEVEN B. AUBREY, Individually, STEVEN B. AUBREY, as Beneficiary of the AUBREY FAMILY TRUST, and BRIAN E. VODICKA file this Complaint against Defendants THE ESTATE OF IRA TOBOLOWSKY, MICHAEL B. TOBOLOWSKY, FAITH G. BURK, STEPHEN SCHOETTMER, DAVID P. HENDRICKS, ERIC V. MOYE, DONALD J. COSBY, RICHARD B. AUBREY, JR., BETSY S. AUBREY, RACHEL ANN CRAIG, ROBIN L. LANDIS, JACKIE K. WHEELINGTON, KENNETH ISAAC SIMMONS and JANE DOE, and for cause of action will respectfully show unto the Court as follows:

1

## OVERVIEW

1.      Ira Tobolowsky was a man with a range of complex and opaque business interests whose family is entwined in the business and political elites of Texas. Tobolowsky was linked through a dense set of interlocking relationships with families tied by blood, marriage, and business interests who are powerhouses politically, legally, culturally, and economically in the city and state. Tobolowsky — lawyer, investor, lobbyist — was the scion of a family whose members are scattered throughout the legal profession and judiciary in Texas.

2.      Yet much of Tobolowsky's work was behind the scenes, serving the interests of those who chose not to be publicly identified. Over decades, Tobolowsky and his business associate served as agents for dozens of businesses that opened and then closed with pendulum-like regularity. Tobolowsky regularly represented these entities in court, thus masking their principals from public view.

3.      At the time of his gruesome murder in May 2016, Tobolowsky was personally involved in two multiyear legal cases involving vast sums of money. The first, as related in open court filings, was a struggle over control of a patent worth hundreds of millions of dollars. Even there, Tobolowsky's true role was obscured. A second case involved a hidden struggle hinted at between the lines of sparse probate court filings.

4.      Yet immediately after Tobolowsky's gruesome murder in May 2016, the Dallas Police Department chose not to examine the multiple avenues of inquiry afforded by Tobolowksy's complex and shadowy family and business interests. Instead, the DPD and certain members of the judiciary chose to publicly identify two gay men of modest means as suspects in the high-file case.

5.      Immediately, the DPD used extralegal means to gather information of the Plaintiffs, even though they had ample evidence that Plaintiffs were not involved in Tobolowky's murder, including an electronic trail and eyewitnesses. Yet public naming of Plaintiffs was necessary to deflect attention from where it most logically and properly pointed rested: on Tololowsky's manifold and shadowy business interests as well as his family's behind-the-scenes struggle over a large estate.

6.      Plaintiffs are gay married couple ages 59 and 60 — one an HIV-positive CPA, lawyer, university instructor, and amateur conductor and the other a lighting designer and massage therapist.  Prior to an October 2016 false arrest and malicious prosecution, Plaintiffs had clean police records with no violent history of any type. Additionally, Plaintiffs have never carried weapons and have never been known to carry weapons.

7.      Plaintiffs, a married senior citizen minority couple of very modest means, were framed for capital murder in a rush to judgment.[1] Ira Tobolowsky, a gambling industry lawyer/lobbyist was burned alive in the garage of his North Dallas home in the early morning hours of May 13, 2016. Prior to the murder and after, Plaintiffs have been injured by the corrupt practices of certain individuals, judges, and courts by and through a pattern of racketeering activity.  In addition to Plaintiffs' injuries caused by the defendants' bank fraud, extortion, bribery of public officials, frauds and swindles, fraud by wire, obstruction of justice, obstruction of criminal investigations, laundering of monetary instruments, transportation of stolen monies, sale or receipt of stolen moneys, engaging in monetary transactions in property derived from specified unlawful activity, they also suffered injuries that were proximately caused by the defendants' RICO enterprise.

---

[1] The couple has been together since December 10, 1994, or 18 days shy of 25 years.

## PARTIES & RICO CO-CONSPIRATORS[2]

8.      Plaintiff Steven B. Aubrey, Individually ("**Aubrey**") is a resident of Broward County, Florida and is before this Court for all purposes.

9.      Plaintiff Steven B. Aubrey, as Beneficiary of the Aubrey Family Trust, is a resident of Broward County, Florida and is before this Court for all purposes.[3]

10.     Plaintiff Brian E. Vodicka ("**Vodicka**") is a resident of Broward County, Florida and is before this Court for all purposes.

11.     Defendant The Estate of Ira Tobolowsky ("**The Estate**") is a Dallas, Texas-based entity and may be served with process by serving its Independent Executor, Michael Tobolowsky at 4305 West Lovers Lane, Dallas, Texas, 75209, or wherever he may be found.

12.     Defendant Michael B. Tobolowsky ("**M. Tobolowsky**") is a Dallas, Texas attorney who may be served with process at his business address of 4305 West Lovers Lane, Dallas, Texas 75209, or his personal residence at 5735 Richmond Ave., Apt. J., Dallas, Texas 75206 or wherever he may be found.

13.     Defendant Faith G. Burk ("**Burk**") is a Dallas, Texas attorney who may be served with process at her residence/business address of 6928 Stone Meadow Drive, Dallas, Texas 75230 or wherever she may be found.

---

[2] Additional facts, entities, and other individuals who assisted Defendants in orchestrating and perpetuating the Scheme are included in the Complaint and will be described more specifically in a RICO Statement.

[3] Plaintiff Steven B. Aubrey, as Beneficiary of the Aubrey Family Trust brings claims under 18 U.S.C. 1961 et. seq. derivatively on behalf of the Aubrey Family Trust, pursuant to the express terms of the Last Will & Testament under the Will of Richard B. Aubrey, Deceased, admitted into probate in Dallas County Probate Court No. 3 and pursuant to the Texas 5th Court of Appeals holding in Case No. 05-16-00506-C, *Steven B. Aubrey v. Betsy S. Aubrey.*

14.     Defendant Stephen C. Schoettmer ("**Schoettmer**") is a Dallas, Texas attorney who may be served with process at his business address of 4305 West Lovers Lane, Dallas, Texas 75209, or his personal residence at 5607 Anita Street, Dallas, Texas 75206 or wherever he may be found.

15.     Defendant David P. Hendricks ("**Hendricks**") is a Dallas, Texas attorney and certified public accountant who may be served with process at his office at 7557 Rambler Road, Suite 930, Dallas, Texas 75231 or his personal residence at 2838 State Street, Dallas, Texas 75204 or wherever he may be found.

16.     Defendant Eric V. Moye ("**Judge Moye**") is a judge for the 14th Civil District Court Dallas County, Texas and may be served with process at his office, the George L. Allen, Sr. Courts Building, 600 Commerce Street, 5th Floor New Tower, Dallas, TX 75202 or wherever he may be found.

17.     Defendant Donald J. Cosby ("**Judge Cosby**") is a judge for the 67th Civil District Court Tarrant County, Texas and may be served with process at his office, the Tom Vandergriff Civil Courts Building, 4th floor, 100 North Calhoun Street, Fort Worth, Texas 76196 or wherever he may be found.

18.     Defendant Richard B. Aubrey, Jr. ("**Buck**") is a resident of Dallas County, Texas and may be served with process at his residence, 3920 Hockaday Drive, Dallas, Texas 75229 or wherever he may be found.

19.     Defendant Betsy S. Aubrey ("**Betsy**") is a resident of Dallas County, Texas and may be served with process at her residence, 3920 Hockaday Drive, Dallas, Texas 75229 or wherever she may be found.

20.     Defendant Rachel Ann Craig ("**Craig**") is an administrative attorney for the State Bar of Texas Office of Chief Disciplinary Counsel. She may be served with process at her place of business, 14651 Dallas Parkway, Suite 925, Dallas, Texas 75254 or wherever she may be found.

21.     Defendant Robin L. Landis ("**Landis**") is a senior investigator for the State Bar of Texas, Office of Chief Disciplinary Counsel. He may be served with process at his place of business, 14651 Dallas Parkway, Suite 925, Dallas, Texas 75254 or wherever he may be found.

22.     Defendant Jackie K. Wheelington ("**Wheelington**") is assistant disciplinary counsel for the State Bar of Texas Office of the Chief Disciplinary Counsel. She may be served with process at her place of business, 14651 Dallas Parkway, Suite 925, Dallas, Texas 75254 or wherever she may be found.

23.     Defendant Kenneth Isaac Simmons ("**Simmons**"), engaged by M. Tobolowsky to assault Plaintiffs, is a resident of Cooke County, Texas and may be served with process at his residence, 1662 E. Lone Oak Road, Valley View, Texas 76272 or wherever he may be found.

24.     Defendant Jane Doe is an unidentified female partner of Defendant Simmons, also engaged by M. Tobolowsky to assault Plaintiffs.

25.     Aubrey and Vodicka are referred to collectively as "**Plaintiffs**."

26.     Craig, Landis, and Wheelington are referred to collectively as "**State Bar Defendants**."

27.     The Estate, M. Tobolowsky, Schoettmer, Burk, Hendricks, Buck, Betsy, Craig, Landis, Wheelington, Simmons, and Jane Doe are referred to collectively as "**Defendants**."

## JURISDICTION AND VENUE

28.     Federal question and original jurisdiction are invoked and are proper under 28 U.S.C. § 1331, because this action involves violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

29.     This Court has diversity jurisdiction under 28 U.S.C. §1332 because the matter in controversy exceeds the sum or value of $75,000, the plaintiffs are citizens of the state of Florida and the defendants are citizens of the states of Texas and Maryland.

30.     This Court also has jurisdiction under 18 U.S.C. § 1951, the Hobbs Act.

31.     Venue is proper under 28 U.S.C. § 1391(b)(1) insofar as the Northern District of Texas is the judicial district in which the Defendants reside.

32.     Venue is proper under 28 U.S.C. § 1391(b)(2) insofar as the Northern District of Texas is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS AND ALLEGATIONS

### A.  The Plaintiffs

33.     Plaintiffs Steven Aubrey and Brian Vodicka were partners for nearly two decades before they married in 2014. At all relevant times herein, Vodicka has been a disabled individual under the Ryan White Care Act. Plaintiffs will celebrate their 25th anniversary on December 10, 2019.

34.     When Vodicka was 13 years old, he began his first career as a Texas baseball umpire, starting at $5 a game. Subsequently, Vodicka became a respected football referee. He taught his high school band director Donald T. Haynes, as well as others, how to umpire baseball

and referee football. The savings from the thousands of games he umpired gave Vodicka the down payment on his first real property in Austin, Texas. Vodicka became a CPA and practiced law/public accounting? As an adjunct professor, Vodicka was an accomplished member of the faculty at the University of Texas McCombs Graduate School of Business. His accounting students continuously and consecutively scored the highest in the nation on the nationwide uniform CPA. exam, exceeding the scores of Stanford, Harvard, and the University of Pennsylvania Wharton School of Business. Vodicka volunteered for the Texas Advocacy Project (which runs the domestic family abuse hotline), took part in civil rights marches, and participated in the civil rights march from Zion Baptist Church to the steps of the South Carolina State Capitol, in Columbia, South Carolina during the 2006 Presidential Election.

35.     On October 7, 2004, Vodicka was appointed to the Board of Directors of a U.S. public company at the request and behest of Barbara Hearst, an advocate of women's rights, women's health, and the fight against breast cancer.

36.     Vodicka's dreams of using his abilities to serve as a director of a public company in the post-Sarbanes Oxley Act era of corporate governance were shattered at the first Board of Directors meeting of DOBI Medical International, Inc.

37.     On October 7, 2004, Vodicka learned that this single-product company, an imaging device that supposedly used angiogenesis to detect breast cancer, did not work. In fact, DOBI was not a firm that manufactured a breast cancer detection imaging device for women, as advertised. DOBI was a public company front for an undisclosed Cayman Islands "pump and dump" stock fraud boiler room using the U.S. penny over-the-counter stock market.[4] Vodicka

---

[4] The undisclosed true owner of the entire public float of DOBI Medical's stock was held by the Verus Group, headquartred out of New York City and Barbados. Vancounver, Canada residents, notorious Wall Street predator, corporate raider and financier to Dallas, Texas resident T. Boone Pickens, Sam Belzberg and his son, Marc Belzberg, were secret members of the Verus Group. Author James B.

self-educated on the intricacies of the financial scam and became an expert on these types of frauds. Afterward, Vodicka was an invited guest lecturer at the University of Texas Accounting Department and the University of Oregon Law School with presentations titled *Pirates of the Caribbean* and the *Underworld of International Finance*.

38.     Vodicka and Aubrey then invested their last nest egg of savings in what eventually was revealed to be real estate Ponzi scheme executed upon land, named the Wildhorse Ranch, in Austin, Texas. Vodicka and Aubrey were pitched a "safe" and "secure" real estate investment by a union of fraudulent Texas and Southern California unlicensed (securities) mortgage broker/dealers. The scheme was originated by two members of Russian organized crime who have since become international fugitives detailed on the FBI's most wanted list, Victor and Natalia Wolf.[5] The group of Russian nationals included Vitaly Zaretsky and undisclosed Russian nationals Gennady Borokhovich, brothers Sam and Zelig Zeltser, and Aron Greensphun. Two national title companies, Fidelity National Title Insurance Co. and Lennar's Dallas, Texas–based North American Title Company laundered millions through the title companies escrow accounts.

39.     Vodicka recently completed a two-year contract teaching minority foster children how to read, write, and spell at Kids in Distress. Vodicka no longer has a part-time job and has been unable to find one. He lives off of his monthly Social Security payments and the loving support of his partner, Steven Aubrey.

---

Stewart's *Den of Thieves* reported a gathering of the Belzbergs with leveraged junk bond king, convicted felon Michael Milken in Beverly Hills, California. He had been previously sued by the United States Securities and Exgange Commission for "stock parking". Marc Belzberg's appeal was denied by an opinion drafted and authored by Justice Ruth Bader Ginsburg, during her time serving the Court of Appeals.

[5] *See* CNBC's Amercan Greed: From Russia With Lies.

40.     Vodicka has also conducted the Milwaukee Symphony Orchestra for their July 4th Concert on the banks of Lake Michigan before an estimated crowd of one million people, as well as the Austin Symphony twice, University of Texas Wind Ensemble, University of Texas Longhorn Band, Austin Summer concerts at Zilker Park, Austin High School Band, and his alma the Lyndon Baines Johnson High School Band.[6]

41.     Steven Aubrey grew up in Dallas, Texas. The son of a respected and well-known orthodontist, he spent most of his time at the stables where he successfully trained quarter horses and won many competitions and championships.

42.     Aubrey became Vodicka's caregiver in December 1994 and continues to this day. Aubrey chose a lifetime of service for a partner who continuously takes toxic (sometimes life-threatening), debilitating medications to combat his life-threatening disease.

43.     While living in Austin in the 1990s, Aubrey started and managed a successful landscape lighting business. Always a very hard worker, Aubrey literally dug trenches through the central Texas bedrock with his crew to properly bury the electrical lines that ran to the trees. Aubrey had nothing but happy customers, as he always did what he said he would do when he said he would do it.

44.     Aubrey has been carrying the financial burden of the couple since the Wildhorse Ranch scam devoured all of Aubrey and Vodicka's lifetime savings.

---

[6] Vodicka conducts A. Aaron Copland's "Fanfare for the Common Man" at Hyde Park Baptist Church:
https://video.search.yahoo.com/yhs/search;_ylt=AwrC3HxX8r1dEU0AuQYPxQt.;_ylu=X3oDMTByM
jB0aG5zBGNvbG8DYmYxBHBvcwMxBHZ0aWQDBHNlYwNzYw--
?p=Youtube+Brian+Vodicka+aaron+Copland+Fanfare+for+the+common+man&fr=yhs-domaindev-
st_emea&hspart=domaindev&hsimp=yhs-
st_emea#id=1&vid=4287143738e85b0c3085877cca89c4ca&action=view

## B. The Tobolowsky Enterprise Background

45.     Plaintiffs' injuries were proximately caused, and continue to be caused by, the racketeering activities of the Tobolowsky Enterprise.

49.     The Tobolowsky Enterprise, by and through a pattern of racketeering activity, caused and continues to cause injury to Plaintiffs by way of extortion, bribery of public officials, frauds and swindles, fraud by wire, bank fraud, obstruction of justice, obstruction of criminal investigations, laundering of monetary instruments, and engaging in monetary transactions in property derived from specified unlawful activity, and transportation of stolen monies, sale or receipt of stolen monies.

50.     The parties to this enterprise include: **Ira E. Tobolowsky, Deceased ("Ira Tobolowsky")** and **Defendants Michael Tobolowsky, Burk, Schoettmer, Hendricks, Judge Moye, Judge Cosby, Buck, Betsy, Craig, Landis, Wheelington, Simmons,** and his partner **Jane Doe,** along with Ira Tobolowsky's brother, George Tobolowsky, not made party to this suit, and multiple state court district judges, not made party to this suit, including: The Honorable Michael Miller, Deceased, presided over Probate Court No. 3, Dallas County, Texas; The Honorable Margaret Jones-Johnson, presiding over Probate Court No. 3, Dallas County, Texas; The Honorable Bonnie Lee Goldstein, presiding over the 44th Judicial District Court, Dallas County, Texas; The Honorable Carl Ginsberg, presided over the 193rd Judicial District Court, Dallas County, Texas; The Honorable Judge Bridget N. Whitmore, presiding over the 193rd Judicial District Court, Dallas County, Texas; The Honorable Jonathan Bailey, presiding over the 431st Judicial District Court, Denton County, Texas; and various Texas lawyers not made party to this suit, including: University of North Texas professor Peggy Marie Tobolowsky, Bar Code Number 20089500; and various court personnel not made party to this suit, including: Becky

11

Holland, court administrator for the 67th Judicial District Court Tarrant County, Texas; Z. Lewis, former court administrator for Dallas County Probate Court No. 3; Jennifer Jacobs, court reporter for the 14th Judicial District Court, Dallas County, Texas; Jennifer Hoodenpyle, court reporter for Dallas County Probate Court No. 3; and  Monica Lindstrom court reporter for the 67th Judicial District Court Tarrant County, Texas and will be referred to hereinafter as the "The Tobolowsky Enterprise."

     51.    The controller of the Tobolowsky Enterprise was Ira Tobolowsky.  He was a gambling industry lawyer/lobbyist.[7]  In addition to his involvement with the Texas video-gambling industry, upon information and belief, Ira Tobolowsky had strong ties to the Las

---

[7] *See* February 21, 1998 Austin American Statesman article, *Judge halts Morales' ban on 8-liners // Attorney general's - opinion is termed a violation of state constitution,* by Ken Herman.  The article, the Department of Public Safety was cracking down on eight-liner gambling machines in Texas as a result of Texas Governor George W. Bush's attempt to halt gambling in Texas. Ira Tobolowsky was quoted saying: Dallas attorney Ira Tobolowsky, representing Head, said the Friday ruling should make law enforcement officials think twice before carrying through on recent threats to crack down on eight-liner owners and players. Ira Tobolowsky was instrumental in the video gaming industry. *See* Texas Lottery response to Ira Tobolowsky's request, detailed in the September 5, 1996 Austin American Statesman article, *Bingo operators threaten lawsuit on machine ban,* by Ken Herman.

The April 10, 1997 Austin American Statesman article, *Gambling bill could ban prizes at arcades // Measure's effects may go - beyond casino-type games Series: 1997 Texas Legislature*, by Ken Herman, states: Industry officials say Texas has as many as 15,000 of the machines were collecting more than $100 million a year. House Criminal Jurisprudence Committee Chairman Allen Place said some of themachines claim to pay out up to 400 times the cost of playing. State Representative Terry Keel, a former member of Lyndon Baines Johnson High school, stated: "'If people of the state of Texas wish to change our laws to legalize gambling, that's something they are going to have to tell me they want to do," Keel said. ``Right now, I don't hear that. I hear we have illegal activity going on that in my opinion is illegal right now but is not being enforced."
Ira Tobolowsky represented the Amusement and Music Operators of Texas before the 1997 Texas Legislature.
In *Resolution Trust Corp.* as Receiver for *Metropolitan Financial Federal Savings and Loan, v. World-Wide Insurance Management Corp.* and Lawrence Moffit, Case No. 89-cv- 2313-D, the United States District Court entered a Judgment against World-Wide Insurance in an amount in excess of $1 million dollars. World-Wide was represented by Ira Tobolowsky. When the U.S. Marshalls went to execute on the Judgment, they discovered World-Wide was nothing but an empty shell company and on December 7, 2006, they reported back to the U.S. Federal Judge, "No such Business there". Dkt # 121.

Vegas, Nevada diamond industry.[8]   In 2008, Ira Tobolowsky was arrested and criminally charged in South Carolina in Case No. D317662.  In the early morning hours of May 13, 2016, Ira Tobolowsky was burned alive in the garage of his North Dallas home.  Control of the Tobolowsky Enterprise was passed down to his son, Michael Tobolowsky, with little or no change in its racketeering activity and influence.

52.     Ira Tobolowsky's brother, George Tobolowsky, was intractably connected to the Las Vegas diamond industry through Management Franchise Management Company, La Vegas, Nevada, along with Barry Zale, and his wife Cindy Zale, as recently as 2012. The "nexus" of the Tobolowsky Enterprise was gambling, real estate fraud, mortgage fraud, entertainment, sports and law.[9]

53.     Plaintiffs were and continue to be injured by the corrupt practices and corrupt influences upon multiple public officials, including, but not limited to, multiple Democrat judges in Dallas County, a Tarrant County state court judge, Texas peace officers, a Texas Fire and Rescue official, Texas judicial assistants, and others, by and through a pattern of racketeering activity.

54.     In 1995, Ira Tobolowsky represented his brother, George Tobolowsky, in a racketeering lawsuit in Case No. 91-cv-02821-X, styled *Federal Deposit Insurance Corp. vs. George Tobolowsky*, a racketeering and in Case No. 3:95-cv-02694-L, styled *Gilbert v. Capital Entertainment, Donny Zale and Barry Zale*.

---

[8] *See* sealed Case No. 3:14-cv-04190-N-BK, styled *Chelsea L. Davis v. McKool Smith PC, Samuel Baxter, State Bar of Texas, Leslie Ware, Dallas Texas developer Harlan Crow, Emily Tobolowsky, Donald Colleluori, et. al.*

[9] The Zale family empire "nexus" was diamonds, entertainment and real estate.

55.     This case involves totally sealed federal court dockets[10] and totally sealed federal court case, Case No. 3:14-cv-04190-N-BK, all involving Ira Tobolowsky of Tobolowsky & Burk P.C. located at 4305 West Lovers Lane, Dallas, Texas 75209. The Tobolowsky Enterprise conspires with and is protected by the judicial branches of the Texas state judicial system, as outlined herein[11]. See *FDIC and NCNB Texas N.A. v. Inwood Lovers Joint Venture, Theodore Swinney, Sigmund Weiner, Stephen Birnbaum, Daniel Bryan Zale Trust, Gregory Robert Zale Trust, et. al.*[12] Ira Tobolowsky and Burk represented Stephen Birnbaum in this case. Stephen Birnbaum's brother, Marc Birnbaum is the registered agent for Ira Tobolowsky's Apartment Maintenance Services Inc., operating out of 4305 West Lovers Lane Dallas, Texas.  Stephen Birnbaum and Marc Birnbaum are principles of MAB Realty, which operates out of 4305 West Lovers Lane Dallas, Texas.   The new controller of the Tobolowsky Enterprise, Michael Tobolowsky, also operates out of 4305 West Lovers Lane Dallas, Texas.

56.     Prior to September 5, 1996, Ira Tobolowsky sent a letter to the Texas Lottery Commission complaining "the Lottery Commission went to far last month when it ordered bingo halls to disconnect the so called eight-liner machines, named for the number of ways a player can win."[13] Ira Tobolowsky stated: "My clients will have no alternative but to seek redress in court." Ira Tobolowsky represented bingo operators and machine owners as part of a long history of

---

[10] *United States Securities & Exvchange Commission v. Mabe, Inc.* filed on November 16, 2005 and terminated on July 16, 2008. Senior U.S. District Court Judge, Northern District of Tecxas Sam R. Cummings, presiding.

[11] *See* Case No. 5:05-cv-00266-C,  *SEC v. Mabe, Inc*, and *Chelsea Davis v. McKool Smith,* a United States Government (on behalf of the public) case yet the records only reflect a total of four filings.

[12] Upon information and belief, Daniel Bryan Zale and Gregory Robert Zale operated Zale's jewelers in Texas and Las Vegas, Nevada.

[13] Ken Herman, Austin American Stateman, Austin Texas September 5, 1996.

fighting gambling in Texas. Upon information and belief, Ira Tobolowsky's defunct company AMGAMES Inc. involved on-line gambling interests operated out of the same West Lovers Lane address.

57.     For years, Ira Tobolowsky was involved in or represented the Dallas Pedicab business, operating as (now defunct) Dallas Pedicab Services LLC, operating out of the same address as Tobolowsky's law office, 4305 West Lovers Lane, Dallas, Texas.[14]

## C.  The Scheme Against Plaintiffs

58.     The scheme against Plaintiffs originated in Dallas County Probate Court No. 3, where as a beneficiary of the Aubrey Family Trust, Aubrey had legal standing to an accounting of the Trust.

59.     On July 7, 2014, Judge Michael Miller entered and order for the accounting of the Aubrey Family Trust.   Burk was representing Betsy but she brought in her partner Ira Tobolowsky to influence the court.

60.     On July 212, 2014, without filing a motion to vacate and without holding a hearing, Ira Tobolowsky made a personal trip to the courthouse to visit with the judge and walked out with a signed order vacating the July 7, 2014 order for an accounting.   Ira Tobolowsky influenced several judge's conduct that was injurious to the rule of law.

61.     Plaintiffs suffered injury by reason of Ira Tobolowsky's controlling interest in the enterprise because without Ira, the enterprise would have folded, the properties would have been returned to the rightful owner, Aubrey Family Trust, and Junior and Betsy would be held accountable for hundreds of thousands of dollars in taxes that were never paid to the federal

---

[14]   Between 2005 and 2008, Ira Tobolowssky was involved to some degree in the Allen Stanford Ponzi scheme, but his role is not yet clear.

government on the $300,000 plus annual income produced from the properties, ultimately cleaning up the financial house of cards created by the enterprise and bringing the properties back to legitimacy.

62.     Ira Tobolowsky bribed, extorted or threatened Judge Eric Moye to issue an order finding Aubrey was a vexatious litigant, completely contradicting a previous order from a Travis County state court that denied Ira Tobolowsky's same motion. Ira Tobolowsky's influence over Judge Moye caused him to act out of his discretion and extort Plaintiffs for hundreds of thousands of dollars.

63.     On March 10, 2016, Aubrey attended a hearing in front of Judge Moye and after the judge mercilessly berated Aubrey, he threatened to throw Aubrey in jail and he ordered Aubrey to hand him his cell phone so he could search it, without a warrant. Because Aubrey said he did not have his phone with him, Judge Moye ordered the sheriff's deputy to escort Aubrey to his car to get the phone, without a warrant.

64.     After walking three blocks in the rain, Aubrey looked in the console and told the deputy the phone was not in the car. The deputy said they would need to impound Aubrey's car for a thorough search, without a search warrant. Aubrey begged the deputy to search the car himself as it was his only transportation back to Austin.   Without probable cause and without a warrant, the deputy proceeded to search Aubrey's car.

65.     After finding nothing of interest, Aubrey and the deputy returned to the courthouse and Judge Moye's court where the judge continued to threaten Aubrey with prison.

66.     At Ira Tobolowsky's direction, Moye issued multiple ex parte orders that injured Aubrey, one for $250,000. After Judge Moye finally accused Aubrey of murder and recused himself from the case, Judge Don Cosby was appointed to it and in no time the new controller of

the Tobolowsky Enterprise, Michael Tobolowsky, established his own fertile ex parte relationship with the new judge.

67.    Aubrey finally acquired Judge Cosby's court phone records that indicate constant communication between the court, Michael and his attorney, co conspirator Schoettmer.  The phone records indicate that the court would initiate many of the calls to either Michael or his lawyer, but there were no calls to Plaintiffs' numbers.

68.    Michael either bribed, extorted, or threatened Judge Cosby because just like Judge Moye, Judge Cosby threaten to imprison Plaintiffs because of their inability to pay the astronomical sanctions imposed on them by Judge Moye.

69.    Ultimately, Michael's influence was more effective that his father's as Judge Cosby issues a final judgment against Plaintiffs for $5.5 million in a frivolous case without a witness and without any claims for damages.  Michael Tobolowsky had/has unbridled influence over Judge Cosby.  In fact the judge entered orders commanding Plaintiffs' email and cell phone providers to produce all historical tracking surveillance data beginning 4 ½ months prior to the murder of Ira Tobolowsky, in the name of locating assets to satisfy the frivolous debt he created.

70.    Thus far, Judge Cosby has acted outside his discretion by entering orders for an unconstitutional award of $5.5 million and for Plaintiffs' private and confidential cell phone data, grossly violating their rights to privacy protected under the U.S. Constitution.

71.    And Judge Cosby refuses to recuse himself even though he has been caught red-handed in an embarrassing ex parte relationship with Michael Tobolowsky and Schoettner,

72.    Just like his father did with Judge Moye, Michael influenced Judge Cosby to issue a third ruling on the same vexatious motion filed against Aubrey so there are now two rulings in

conflict with the first one. Judge Moye and Judge Cosby each (allegedly) conducted hearings that Plaintiffs were not permitted to attend.

**D.  Moye's Criminal Indescretion and Scheme**

73.    On May 13, 2016, at approximately 7:50 am, Ira Tobolowsky died in a suspicious fire at his home.

74.    On May 13, 2016, Judge Moye committed aggravated assault on a woman in a car who was driving next to him on the North Dallas Tollway. His victim asked the Dallas Police Department for help but they would not. And today DPD does not even have anything to reflect the report called in from the victim.

75.    Judge Moye's indiscretion was making the news because his victim took a picture of him in his Mercedes and posted it on Facebook asking if anybody knew the perpetrator. The timing could not have been worse as the incident took place in the middle of his re-election campaign.

76.    In violation of Texas Code of Judicial Conduct Cannon 3(B)(10), Judge Moye began releasing statements to the media regarding Plaintiffs' pending litigation in his court. The calculated and misleading statements he released suggested that Judge Moye thought Plaintiffs had some connection to the murder of Ira Tobolowsky and indicated that he would decide against Plaintiffs in their case before his court.

77.    On May 18, 2016, Judge Moye's conjured up fear over the case in his court (Plaintiffs' case) was featured on an NBC Today Show segment with Matt Lauer. Never subjecting himself to be questioned in an interview, Judge Moye also would only release his calculated statements to the Today Show, which included: "He was made aware of this horrific crime and warned of a possible connection between it and litigation that has been handled by his

18

Court" and "Police expressed concerns related to the safety of Judge Moye and his Court staff." The Today Show prominently displayed across the television screen, "Texas Judge Told To Arm Himself."

78.     Today Show reporters stated the following as Judge Moye's false statements were displayed on the screen: "This morning Dallas civil court Judge Eric Moye says he has been advised to arm himself amid fears he may be a target;" "The judge and lawyer, both involved in a high-profile civil suit;" and "The has since recused himself from that case involving Ira Tobolowsky." Anybody with remote curiosity could easily determine the case the Judge Moye was publicizing involved Plaintiffs but most important, upon information and belief, law enforcement agencies do not advise citizens to arm themselves under any circumstances. Judge Moye fabricated this to excuse his May 13, 2016, gun incident and assault on the woman driver.

79.     Moreover, all of Judge Moye's May 18, 2016 statements completely contradict the statements he released several days prior regarding who was doing the "warning." On May 15, 2016, the Dallas Morning News published, *Dallas judge given extra security after attorney's death in suspicious fire*, by Claire Cardona, stating: "…the judge warned officials of a possible connection between Tobolowsky's death and litigation being handled by Moyé's court." Also on May 15, 2016, CBS News published, *Judge Receives Added Security After Lawyer's Death*, by Steve Pickett, stating: "There was never an actual threat made against Moye, but the patrols were simply a courtesy after he expressed safety concerns, officials said."

80.     On May 16, 2016, NBC News published, *Detectives Investigating Death of Dallas Attorney*, by Jeff Smith, stating: "While it's unclear if the case is related to Tobolowsky's death, the presiding judge told the Dallas County Sheriff's Department he's now afraid for his personal safety." Clearly, Judge Moye's changed narrative from him warning officials to

officials warning the judge was a better fit for the excuse he needed.  Judge Moye fabricated a fact that officials warned him and told him to arm himself.[15]

81.    All of the statements released by Judge Moye and/or his court staff violated Texas Canon 3(B)(10), which states: "A judge shall abstain from public comment about a pending or impending proceeding which may come before the Judge's court in a manner which suggests to a reasonable person the Judge's probable decision on any particular case…A judge shall require similar abstention on the part of court personnel subject to the judge's direction and control."[16]

**E.  Moye's Abusive Hearing**

82.    On March 10, 2016, Judge Moye conducted a hearing in Cause NO. DC-15-08135. Judge Moye quizzed Aubrey in open court, demanding that he recite his friend's cell phone numbers and mailing addresses of their residences.  When Aubrey responded that he does not know anybody's number due to speed dial on his phone, the judge accused Aubrey of being untruthful..  Without respect for Aubrey's personal property, respect for the law, and without a warrant or probable cause, Judge Moye announced he was suspending the Court's hearing and he directed the Dallas County Sheriff to follow Aubrey to his vehicle and retrieve his phone and impound his car if necessary, all in the interest of collecting Ira Tobolowsky's $7,675 of attorney's fees.

83.    On March 17, 2016, Judge Moye entered an ex parte Order holding Plaintiffs  in contempt of court for their inability to pay Ira Tobolowsky the amount of $7,675.

---

[15] The motive behind Judge Moye's announcement to the media, implicating Aubrey in the murder of Ira Tobolowsky, was to divert attention away from his North Dallas Tollway fire-arm incident and the negative press that began to build as a result of his offense. In fact, to save his re-election campaign, Judge Moye threw two innocent senior citizens, Aubrey and Vodikca, under the bus to save his job as the judge for the 14th Judicial District Court, Dallas County, Texas

[16] The Texas Code of Judicial Conduct is incorporated into the Texas Constition as Art. V, Section 1-a.

20

84.     At the time, Plaintiffs were unaware that Ira Tobolowsky had bribed Judge Moye to "throw" the entire case for the benefit of Judge Moye's re-election campaign.  Judge Moye was courting favor with the Tobolowsky power structure headed by Dallas, Texas state Judge Emily Tobolowsky for support in the upcoming election for judicial office holders.

85.     On March 30, 2016, Aubrey filed his Motion to Appoint Counsel and Affidavit of Indigency as he had no legal representation and could not afford the expense to retain counsel for the adversarial proceedings that could result in confinement.  Judge Moye ignored the motion and the request in violation of Texas Code of Criminal Procedure Art 1.051(c).

**F.   Judge Cosby Oct 26 Hearing**

86.     On October 26, 2016, Plaintiffs each filed motion to determine they were indigent.

87.     Later the same day, October 26, 2016, Judge Cosby held a hearing in Dallas County Cause No. 15-08135, in which the judge made clear that if Plaintiffs were unable to pay the costs of Ira Tobolowsky's legal fees, in the amount of $7,675 the court would hold Plaintiffs in contempt of court and would consider punishing Plaintiffs punishment with confinement for a maximum of six months.

88.     Vodicka and Aubrey each filed a Motion to Appoint Counsel, as they had no legal representation and could not afford the expense to retain counsel for the adversarial proceedings that potentially could result in confinement.

89.     In each of their respective motions to Judge Cosby, Plaintiffs clearly presented the law that stipulated the court's compliance. The Texas Code of Criminal Procedure Art. 1.051(b) states" "Indigent means a person who is not financially able to employ counsel,"  a definition the described Plaintiffs' situation.

90.     Texas Code of Criminal Procedure Art 1.051 (b) and (c) were presented in Plaintiffs' respective Motions to Appoint Counsel, presented to Judge Cosby and the Court. Texas Code of Criminal Procedure Art 1.051(c) provides, in pertinent part:

> **"An indigent defendant is entitled to have an attorney appointed to represent him in any adversary judicial proceeding that may result in punishment by confinement** and in any other criminal proceeding if the court concludes that the interests of justice require representation.   Subject to Subsection (c-1), if an indigent defendant is entitled to and requests appointed counsel and if adversarial judicial proceedings have been initiated against the defendant...a court or the courts' designee shall appoint counsel as required by this subsection as soon as possible, but not later than the end of the first working day after the date on which the court or the courts' designee receives the defendant's request for appointment of counsel.** (Emphasis added.)

91.     Both Judge Moye and Judge Cosby ignored the statute and Plaintiffs were never appointed counsel per the law.

92.     Dallas County Local Rules state that the Court is required to appoint counsel whenever a Court holds a person in contempt of Court. At that time, both Vodicka and Aubrey were "indigent."[17] Judge Moye and Judge Cosby both denied Vodicka and Aubrey their constitutional rights to legal representation under the Sixth and 14th Amendments to the U.S. Constitution.

---

[17] In a subsequent development, Michael Tobolowsky challendged Vodicka and Aubrey's indigency. The Texas Rules of Civil Procedure do not allow a party to challenge the "Indigency". Judge Cosby first executed an Order denying Tobolowsky's Motion. Then, unop re-urging, Cosby held another "secret" court hearing where Vodicka and Aubrey were not allowed to participate, were denied their basic due process rights to hear the charge against them ( much like Otto Warmbeier in North Korea), present their evidence, argue their facts and law. Secret Hearings are left for states such as North Korea, Iran, and Russia; not the "adversarial" system of justice that underpins the justice system in the Unoited States of America.

93.     On or about _____, Judge Moye entered an Order granting Ira Tobolowsky's additional motion for Sanctions in the amount of _____ Much later, upon Steven Aubrey's appeal of this particular Sanction amount, on ___ day of ___, ___ the Texas 5th Court of Appeals reversed the award ruling that Judge Moye abused his discretion. This unlawful Sanctions amount was then used by Judge Cosby to threaten Aubrey and Vodicka with jail for contempt of court for failing to pay the Sanctions to Ira Tobolowsky.

94.     Judge Moye denied Plaintiffs Aubrey and Vodicka their basic constitutional right to legal representation, violating Plaintiffs rights under the 5th Amendment to the U.S. Constitution. Judge Moye was using his Court and judicial process to collect Ira Tobolowsky's bills. In this way, Judge Moye was extorting Plaintiffs for Ira Tobolowsky.

**G.   Judge Cosby Reign of Terror**

95.     When Judge Donald Cosby took over as the presiding Judge of the 14th Judicial District Court, Judge Cosby too threatened Vodicka and Aubrey with jail for non-payment of the same Sanctions amount. Judge Cosby too, failed to adhere to the Local Rules of Dallas County Courts, in violating Plaintiffs right to legal representation once a Sanctions turns into Contempt of Court. In this manner, Judge Cosby too was using the judicial process of the 14th Judicial District Court to (a) collect Ira Tobolowsky's bills, and (2) extort money from Plaintiffs, money they simply just did not have. The value being extorted was Plaintiffs personal liberty.

96.     Judge Cosby additionally has denied Aubrey and Vodicka their U.S. Constitutional rights under the "due process clause" and "equal protection clause of the 14[th] Amendment by not allowing Plaintiffs to appear by telephone for all of the hearings in DC-15-08135, save one hearing, the Order quashing all of Vodicka and Aubrey's emails and cell phone information. Judge Cosby admitted in that one hearing that he had read the D Magazine article

titled 'A Place where Something Evil Happened'. This demonstrates that Judge Cosby was not a neutral tribunal, denying Plaintiffs the basic right of due process of law. Judge Cosby has also denied Plaintiffs the right to be heard in a meaningful manner in DC-15-08135. Plaintiffs contend that Judge Cosby acted internationally to strip Plaintiffs of their most basic right to be heard in adversarial proceedings. Judge Cosby, like Judge Moye, shows undue influence by the Tobolowsky enterprise of corrupt lawyers and Judges. The abuse of the legal system by the Tobolowsky enterprise caused a Texas attorney Frank Hernandez, the initial attorney for Mariano Moreno, to die from a heart attack.

97.     The Tobolowsky Enterprise committed racketeering acts including: extortion ; bribery of judges, mortgage fraud, mail fraud, wire fraud, financial institution fraud, obstruction of justice, obstruction of criminal investigations, obstruction of Texas state law enforcement, tampering with witnesses, victim and informant; engaging in monetary transactions in property derived from illegal activity; money laundering and tax fraud.  The conduct described herein also constitutes acts that violated the federal constitutional civil rights of Plaintiffs.  Plaintiffs bring federal, Texas state law, and Florida state law claims.

**H.   November 23, 2015 Pattern of Injuries**

98.     On November 23, 2015, Judge Eric Moye entered an order for Plaintiffs to pay Ira Tobolowsky "reasonable and necessary attorney fees" of  $7,675.  Plaintiffs had never before been ordered to pay sanctions and this was the first indication of a Tobolowsky Enterprise pattern of injuries suffered by Plaintiffs.

99.     Soon after, on December 18, 2015, Ira Tobolowsky forum shopped the same motion to determine Aubrey was a vexatious litigant from a state court in Travis County, Texas

into Judge Moye's court in Dallas, County, Texas, less than 30 days after the Travis County court denied Ira Tobolowsky's same motion.

100.    Plaintiffs recognized that just like their 2014-2015 case in Dallas County Probate Court No. 3, the Tobolowsky Enterprise would illegally use the 14th Judicial District Court, Dallas County, Texas to further its racketeering activities. Therefore, that statute of limitations runs on November 22, 2019.

101.    Plaintiffs were injured by Tobolowsky Enterprise mortgage fraud, national bank fraud, title company fraud, fraud on the court, IRS fraud, criminal use of shell companies, and public official bribery as far back as 2013. As a result of the Tobolowsky Enterprise's fraudulent concealment, Plaintiffs' diligent efforts to discover the other victims of similar Tobolowsky Enterprise activities to establish their civil RICO claims, did not bear fruit until 2016, when the scheme was discovered. The 2016 discovery of the patterns tolls the statute of limitations to 2020.

102.    On April 19, 2016, (approximately three weeks before Ira Tobolowsky was murdered) Kenneth L Schwarz filed suit against four defendants including Apartment Maintenance Services, Inc., whose vice president was Ira E. Tobolowsky, in Cause No. DC-16-04507 in the 68th Judicial District Court, Dallas County, Texas. Sometime after the lawsuit was filed, Plaintiffs learned that Apartment Maintenance Services, Inc. pledged collateral that it did not own in return for a loan proceeds of approximately $638,900. There was no way for Plaintiffs to have known about this fraud until after the suit was filed. The Tobolowsky Enterprise had fraudulently concealed its pattern of mortgage fraud, detailed in the lawsuit that alleged: the collateral for the loan was not owned by the borrower; the borrower forged a signature; and the borrower never filed or recorded the deeds of trust. Misuse of deeds and not

25

having them recorded is the pattern that connects the Tobolowsky Enterprise to Plaintiffs. The Plaintiffs were the victims of the same scheme.

103. On or about late 2017, another Tobolowsky Enterprise victim contacted Plaintiffs.[18] He educated Plaintiffs about the Tobolowsky Enterprise massive fraud upon the courts with its criminal use of PST Enterprises, LLC ("PST"). While Ira Tobolowsky represented the plaintiff in Cause No. DC-11-12708 in the 298th Judicial District Court of Dallas County, Texas, filed against defendant Deluxe Credit Financial Services, LLC ("Deluxe"), he formed shell company PST. The Tobolowsky Enterprise determined that Deluxe had deep pockets, so PST was formed for the sole purpose of intervening in the same lawsuit to collect a phony debt owed to PST.

104. Though Deluxe had no connection to Denton County, the Tobolowsky Enterprise did. Ira Tobolowsky's cousin Peggy Tobolowsky is a lawyer who teaches at the University of North Texas and is influential in the Denton courts. Stephen Schoettmer represented PST and filed suit for judgment against Deluxe in Cause No. 2011-71412-431 in the 431st Judicial District of Denton County, Texas. As planned, PST, a shell company with no assets or business, was awarded a $782,499.75 judgment against Deluxe. After an abstract of judgment was recorded, Schoettmer filed a Plea in Intervention in Ira Tobolowsky's Dallas lawsuit in Cause No. DC-11-12708.

105. Ira Tobolowsky used undue influence upon Dallas County Judge Ken Molberg.[19] When Ira Tobolowsky filed a Motion for Injunctive relief, Dallas Texas District Court Judge

---

[18] The defamatory media campaign caused by the Tobolowsky Enterprise, enabled its other victims to contact Plaintiffs.

[19] Plaintiffs have not to date and have no reason (to date) to suggest The Honorable Ken Molberg had any indirect knowledge of Ira Tobolowsky's gamesmanship. Judge Molberg is NOT listed as an un-sued co-consirpator, In fact, Plaintiffs have no personal knowledge of the PST litigation. Plaintiffs dealings with

Emily Tobolowsky recused herself from the case.[20] Instead of waiting for the Local Administrative Judge to appoint a new Judge, Ira Tobolowsky sought out Judge Molberg to sign and execute the Injunction behind Moreno's lawyers back.   Judge Moye to act out of his discretion and order Aubrey to pay $250,000 in sanctions.

106.   Like Plaintiffs, Deluxe was a victim of Tobolowsky Enterprise fraud upon the courts. Plaintiffs' discovered the PST fraud in 2016. That fraud established the pattern of fraud upon the courts amongst other things. Tobolowsky Enterprise's fraudulent concealment of PST tolls the statute of limitations. The statute of limitations for the Tobolowsky Enterprise activities that occurred in Dallas County Probate Court No. 3 are tolled and begin when Plaintiffs discovered a victim other than themselves. The existence of another victim established that there was a pattern of RICO predicate frauds.

## TOLLING OF THE STATUTE OF LIMITATIONS

107.   Plaintiffs timely filed their causes of action.

108.   Due to the fraudulent concealment by Defendants of their records and actions, Plaintiffs did not know, and in the exercise of due diligence, could not have known of Defendants' RICO violations until, at least, November 23, 2016,

109.   Additionally, the very structure of the Scheme itself was inherently self-concealing.  The secrecy of meetings between Ira Tobolowsky and Judge Moye and between Michael Tobolowsky and Judge Cosby, make the ex parte proceedings nearly impossible to discover. Finally, as Plaintiffs have alleged conspiracy herein, the acts of concealment of one co-

---

Judge Molberg have been hornorable and forthright, as well as Judge Molbergs interactions with Plaitniffs.

[20] Plaintiffs contend that it was improper for Judge Emily Tobolowsky to hear any case involving Ira Tobolwosky, as a lawyer or as a witness.

conspirator are attributable to all co-conspirators. In this case, with an inherently self-concealing fraud, any acts of fraudulent concealment are attributable to all co-conspirators.

110.    On November 23, 2015, Judge Eric Moye entered an order for Plaintiffs to pay Ira Tobolowsky "reasonable and necessary attorney fees" of $7,675. Plaintiffs had never before been ordered to pay sanctions and this was the first indication of a scheme, an enterprise, and a pattern of criminal predicate acts causing Plaintiffs injuries.

### THE USE OF INTERSTATE COMMERCE AND THE MAILS

111.    Defendants used the facilities of interstate commerce and use of the mails to achieve their frauds on behalf of the Enterprises.

112.    Michael Tobolowsky, Schoettmer and Judge Cosby's court used the facilities of interstate telecommunications commerce.    The following chart exhibits the Tobolowsky Enterprise influence and summary of ex parte calls in Cause No. DC-15-08135 in the 14th Judicial District Court, Dallas County, Texas, the Judge Cosby, presiding:[21]

#### Summary of Calls - July 15, 2016- July 5, 2017

| Stephen Schoettmer | Michael Tobolowsky cell | Tobolowsky P.C. | Judge Cosby's Court |
|---|---|---|---|
| (214) 228-XXXX | (214) 727-XXXX | (214) 352-XXXX | (817) 844-XXXX |

Michael Tobolowsky is a client/party in this case. Stephen Schoettmer is Michael Tobolowsky's counsel in this case.

| Date | | Participants | Ext. |
|---|---|---|---|
| Jul 15, 2016 | 9:31 am | Schoettmer called Court | 1452 |
| Jul 20, 2016 | 7:32 am | Tobolowsky called Court | 1452 |
| Jul 20, 2016 | 8:10 am | Tobolowsky called Court | 1452 |
| Jul 20, 2016 | 8:22 am | Tobolowsky called Court | 1452 |

---

[21] The telephone records produced by the Court has the full identification of the cell phone numbers. Plaintiffs err on the side of caution in re-dacting information that may violate a person's right to privacy

| | | | |
|---|---|---|---|
| Jul 20, 2016 | 11:08 am | Court called Schoettmer | 1452 |
| Jul 21, 2016 | 1:29 pm | Court called Tobolowsky | 1452 |
| Jul 21, 2016 | 3:15 pm | Tobolowsky called Court | 1452 |

**Jul 29, 2016    2:00 pm        PARTIES "MEET" THE NEW JUDGE**

| | | | |
|---|---|---|---|
| Sept 12, 2016 | 9:02 am | Schoettmer called Court | 1452 |

**Sept 12, 2016   1:30 pm      FIRST HEARING**

**Oct 26, 2016                  SECOND HEARING**

| | | | |
|---|---|---|---|
| Oct 28, 2016 | 7:30 am | Tobolowsky called Court | 1452 |
| Oct 28, 2016 | 10:43 am | Schoettmer called Court | 7599 |
| Oct 28, 2016 | 11:47 am | Schoettmer called Court | 1452 |
| Nov 1, 2016 | 1:08 pm | Tobolowsky called Court | 1452 |
| Nov 3, 2016 | 8:25 am | Schoettmer called Court | 1452 |
| Nov 4, 2016 | 10:16 am | Tobolowsky called Court | 1452 |

**Nov 4, 2016    2:00 pm      HEARING**

| | | | |
|---|---|---|---|
| Nov 4, 2016 | 4:42 am | Tobolowsky called Court | 7599 |
| Nov 16, 2016 | 10:10 am | Court called Tobolowsky P.C. | 1452 |
| Nov 17, 2016 | 2:27 pm | Schoettmer called Court | 7599 |

**Nov 22, 2016                HEARING**

**Nov 30, 2016                RECUSAL DENIED**

| | | | |
|---|---|---|---|
| Nov 30, 2016 | 6:55 pm | Schoettmer called Court | 7599 |

| | | | |
|---|---|---|---|
| Dec 1, 2016 | 8:20 am | Tobolowsky called Court | 7599 |
| Dec 1, 2016 | 9:00 am | Tobolowsky called Court | 1452 |
| Dec 1, 2016 | 1:41 pm | Tobolowsky called Court | 1452 |
| Dec 2, 2016 | 10:22 am | Tobolowsky called Court | 1452 |
| Dec 5, 2016 | 2:33 pm | Tobolowsky called Court | 7599 |
| Dec 5, 2016 | 5:26 pm | Tobolowsky called Court | 7599 |
| Dec 6, 2016 | 4:09 pm | Schoettmer called Court | 1452 |
| Jan 20, 2017 | 9:38 am | Court called Tobolowsky P.C. | 1452 |
| Mar 31, 2017 | 9:29 am | Tobolowsky called Court | 1452 |
| Apr. 18, 2017 | 1:12 pm | Court called Tobolowsky P.C. | 1452 |
| Apr. 18, 2017 | 1:33 pm | Court called Tobolowsky P.C. | 1452 |
| May 2, 2017 | 12:21 pm | Court called Schoettmer | 1452 |
| May 2, 2017 | 12:21 pm | Court called Tobolowsky P.C. | 1452 |

**May 2, 2017**_____**ORDER - Calling case for Final Trial**

| | | | |
|---|---|---|---|
| May 4, 2017 | 12:08 pm | Schoettmer called Court | 1452 |
| May 5, 2017 | 9:14 am | Court called Tobolowsky P.C. | 1452 |

**May 8, 2017**_____**TRIAL - Unlawful $5.5 million Judgment**

| | | | |
|---|---|---|---|
| May 31, 2017 | 1:59 pm | Tobolowsky called Court | 1452 |
| June 8, 2017 | 10:59 am | Court called Tobolowsky | 1452 |
| June 8, 2017 | 11:00 am | Court called Tobolowsky | 1452 |
| June 8, 2017 | 11:00 am | Court called Tobolowsky | 1452 |
| June 8, 2017 | 11:48 am | Court called Tobolowsky | 1452 |

| June 8, 2017 | 12:06 pm | Tobolowsky called Court | 1452 |
| June 15, 2017 | 7:30 am | Tobolowsky called Court | 1452 |
| June 28, 2017 | 1:15 pm | Court called Tobolowsky P.C. | 1452 |
| July 5, 2017 | 9:21 am | Court called Tobolowsky P.C. | 1452 |
| July 5, 2017 | 9:22 am | Court called Tobolowsky P.C. | 1452 |

113.    No reasonable person would believe these calls were used for ministerial acts because Plaintiffs were not included in the calls.

114.    First, Plaintiffs were denied the use of telephonic access to the Court hearings before Judge Cosby. Second, Schoettmer was the attorney of record, not Michael Tobolowsky and the records evidence calls initiated by the Court to Michael Tobolowsky. Third, there were not that many hearings held by Judge Cosby and his travel from Fort Worth to Dallas was very limited.

115.    Defendants used the facilities of the mails to achieve their various frauds.

116.    On August 9, 2019, Plaintiffs served a Texas Public Information request on the City of Dallas via email. On or about September 23, 2019, the City of Dallas responded to the request via email and use of the mails. Contained in that response were six newly discovered falsified affidavits for search warrants that were previously unknown to Plaintiffs. On September 29, 2019, Hendricks, a lawyer and CPA submitted a fraudulent accounting of the Aubrey Family Trust's assets and income/expense to Ira Tobolowsky.

117.    With knowledge of its falsity, Ira Tobolowsky then submitted the fraudulent accounting to Judge Michael Miller, Dallas County Probate Court No. 3, Dallas County, Texas. The accounting concealed all of Buck's international travel, including Christmas holiday trips to the Turks & Caicos with everything expensed to the Trust, including Turks & Caicos golf green

fees. Plaintiff Aubrey, through his designated counsel, Brian Vodicka, provided Judge Margaret Jones Johnson with a detailed quick-books accounting of the Aubrey Family LLC that Buck had provided to Steven and Thomas Aubrey in Aubrey's Motion to Appoint Independent Court appointed Auditor in Probate Court No. 3, Dallas County, Texas.

118.    Ira Tobolowsky backdated Dallas County warranty deeds ten years to provide cover for Hendricks' fraudulent accounting. (*See* Deed of Betsy Stirratt Aubrey, Trustee of the Aubrey Family Trust, Instrument No. 201400096153, backdated ten years.)   After filing the falsified deeds with the county clerk, they were recorded and the clerk returned the deeds by mail to the Grantee's address.

119.    Hendricks and Ira Tobolowsky's accounting failed to comport or comply with Texas Property Code Section. The 10-year backdated Deed Instrument No. 201400096153 was to perpetrate fraud upon the I.R.S. during the 2014 I.R.S. audit of the Aubrey Family Trust. Once again, the mails were used by Hendricks to communicate the IRS.

120.    On November 9, 2016, DPD's Interim Chief of Police, David Pughes, mailed a letter to Aubrey informing him that his complaint about Ermatinger and Sayers was reviewed, submitted to the Internal Affairs Division and forwarded to the Crimes Against Persons Division for further review. Then Tracy Dotson, a Sergeant with the Dallas County Public Integrity unit "deep-sixed" the eleven falsified search warrant affidavits.

## RICO PREDICATE ACTS

138.    Plaintiffs repeat and incorporate by reference paragraphs 29-76 and 178-240 above as though fully set forth herein.

**Extortion**

122.   Ira Tobolowsky engaged in patterns of extortion in violation of 18 U.S.C. § 1951, conspiring with judges to take Plaintiffs' property under color of official right.  This manifested itself by making Plaintiffs liable for jaw-dropping fees and sanctions.

123.   On May 7, 2015, Ira Tobolowsky filed a 521-page motion for an order to hold Plaintiffs in contempt of court and for sanctions, in violation of 18 U.S.C. § 1951.  The monetary amount sought was $1,050,000.  Ira Tobolowsky motion also requested that Plaintiffs be confined in jail for a period of 29 consecutive days commencing immediately upon a finding of contempt of court.  This marked the first many attempts made by Ira Tobolowsky to extort money from Plaintiffs and send them to jail.  This attempt failed.

124.   In Cause No. DC-15-08135, Ira Tobolowsky conspired with his "legal counsel" Schoettmer and Judge Moye to begin mounting sanction fees to benefit Ira Tobolowsky/Schoettmer and on November 23, 2015, Judge Moye ordered Plaintiffs to pay Ira Tobolowsky/Schoettmer sanctions of $7,675, in violation of 18 U.S.C. § 1951.  This marked the first time ever that Plaintiffs would be ordered to pay sanctions, but it came too late as this was the era when Plaintiffs began living on a shoestring.  With barely enough money to pay their rent and hundreds of thousands of dollars owned to their former legal counsels, Plaintiffs were unable to comply with the order.

125.   On February 18, 2016, in Cause No. DC-15-11685, Ira Tobolowsky surprised Aubrey with an ex parte order signed by Judge Moye, ordering Aubrey to pay sanctions of $250,000, in violation of 18 U.S.C. § 1951.

126.   On February 23, 2016, just five days later, in Cause No. DC-15-11685, Ira Tobolowsky filed another contempt of court against Plaintiffs, requesting that Judge Moye

punish Plaintiffs with sanctions for their "malicious" conduct and order Plaintiffs be confined in jail for a period of 29 consecutive days, commencing immediately upon a finding of contempt of court.

127.    On August 20, 2019, Michael Tobolowsky delivered by U.S. Mail and six independent email accounts a cease and desist letter that involved use of a website to expose the business practices of Michael Tobolowsky's client, Anthony Bruno.   In the letter, Michael Tobolowsky states:

> Your egregious conduct also violates both Florida and Texas' relevant criminal Laws. In Florida, your conduct amounts to (1) criminal libel, as defined in Chapter 836 of the Florida Criminal Code, as well as (2) harassment and (3) stalking (including cyber-stalking), as both terms are defined in Chapter 784 of the Florida Criminal Code. In Texas, your conduct directly violates Texas Penal Code §33.07, a Felony of the third-degree, as well as Texas Penal Code §42.07.
>
> While I am hopeful that you will comply with the terms of this demand letter, make no mistake, if you refuse to so comply, I will immediately begin taking all steps necessary to force you to do so. If forced, I will be unwavering in my pursuit to have you indicted and prosecuted for any and all criminal acts you have committed, both in Texas and Florida."

128.    Here, Michael Tobolowsky made a written threat to accuse Aubrey of a crime. Under Fla. Stat. 836.05, Michael Tobolowsky committed a second degree felony offense when he made a written threat to accuse Aubrey of a crime with the intent to compel Aubrey to remove the website against his will, punishable up to 15 years in prison, up to 15 years of probation and up to a $10,000 fine.

**Bank Fraud**

129.    Ira Tobolowsky, Michael Tobolowsky, Burk, Schoettmer, Judge Moye, Hendricks, Buck, and Betsy knowingly executed a scheme or artifice to obtain the moneys, funds, credits, assets or other property under the custody or control of various financial institutions by means of false or fraudulent pretenses, representations, or promises in violation of

34

18 U.S.C. § 1344.  They worked together to intentionally misrepresent to national banks the ownerships of various Aubrey Family Trust properties.

**Bribery of Public Officials**

130.    Ira Tobolowsky intentionally or knowingly offered, conferred, or agreed to confer a benefit in exchange for a favorable exercise of discretion by a public servant, violating Texas Penal Code (Title 8 – Offenses Against Public Administration) §36.02, which constitutes an act of racketeering pursuant to 18 U.S.C. § 1961(1)(A).

131.    Michael Tobolowsky intentionally or knowingly offered, conferred, or agreed to confer a benefit in exchange for a favorable exercise of discretion by a public servant, violating Texas Penal Code (Title 8 – Offenses Against Public Administration) §36.02, which constitutes an act of racketeering pursuant to 18 U.S.C. § 1961(1)(A).

**Frauds and Swindles**

132.    Defendants committed acts of mail and wire fraud in furtherance of their scheme to defraud, violating 18 U.S.C. § 1341.    The purpose of these acts was to conceal the fraud and place the fruits of the fraud beyond the ability of Plaintiffs to reach them.

**Fraud by Wire**

157.    The Tobolowsky Enterprise committed mortgage fraud on Ken Schwarz and all monies transferred were done by wire, violating 18 U.S.C. § 1343.

158.    Upon information and belief, the $1 million loan to Aubrey Family Trust, facilitated by the Tobolowsky Enterprise, was done by wire.

**Obstruction of Justice**

159.    Applicable Defendants knowingly altered, destroyed, mutilated, or concealed records and information with intent to impair the integrity or the availability of records and

information and to prevent their use in a pending or foreseeable official proceeding in violation of 18 U.S.C. § 1503  and 18 U.S.C. § 1512.

**Obstruction of Criminal Investigations**

160.    Michael Tobolowsky has interfered with the criminal investigation of his own father, Ira Tobolowsky, violating 18 U.S.C. § 1510.  He has sued the City of Dallas for all of the records related to that investigation, irrespective of the laws of the state that do not permit citizens such access.

**Laundering of Monetary Instruments**

161.    Buck, Betsy, Hendricks, and Ira Tobolowsky conspired to file fraudulent IRS tax returns with intent to engage in conduct constituting a violation of 18 U.S.C. § 1956  and section 7201 or 7206 of the Internal Revenue Code of 1986.

**Transportation of stolen monies**

162.    Defendants (and their co-conspirators and agents) devised and intended to devise a scheme or artifice to defraud and obtain Plaintiffs' money by false pretenses, representations or promises, and transported, caused to be transported, and induced persons to travel and be transported in interstate commerce in the execution or concealment of the scheme or artifice to defraud, in violation of 18 U.S.C. § 2314.

**Sale or receipt of stolen monevs**

163.    Buck, Betsy, Hendricks, and Ira Tobolowsky conspired to violate 18 U.S.C. § 2315 Buck and Betsy possessed money of a value over $5,000 and crossed State and United States boundaries and used the stolen monies for luxury trips in the  Turks and Caicos.

**Engaging in monetary transactions in property derived from specified unlawful activity**

164.    Buck, Betsy, Hendricks, Burk, and The Estate violated 18 U.S.C. § 1957   when they knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000 and the property was derived from mortgage fraud and bank fraud.

## CAUSES OF ACTION

### COUNT I
### Violations of Section 1962(a) of RICO
*Plaintiffs Against The Estate, Michael Tobolowsky, Burk, Schoettmer, Judge Moye,*
*Judge Cosby, Hendricks, Buck, Betsy, Simmons, Jane Doe, Craig, Landis and Wheelington*

141.    Plaintiffs re-allege and restate the preceding paragraphs of this Complaint as if fully set forth herein.

142.    The Estate and Michael Tobolowsky charged the Aubrey Family Trust and Betsy, an 85-yr old widow, approximately $650,000 in legal fees over a time span of approximately sixteen (16) months.  However Buck had illegally stripped the income producing assets away from the Trust and placed them in his own personal LLC.  The stolen properties paid the Tobolowsky Enterprise to continue injuring the Trust, Betsy, and Plaintiffs by way of predicate acts.  The Tobolowsky Enterprise would have sought criminal activity elsewhere were it not for the proceeds from the stolen properties funding the continuation of the criminal scheme and enterprise.  Plaintiffs suffered injury by reason of the defendants' investment in the enterprise.

### COUNT II
### Violations of Section 1962(b) of RICO
*Plaintiffs Against The Estate, Michael Tobolowsky, Burk, Schoettmer, Judge Moye,*
*Judge Cosby, Hendricks, Buck, Betsy, Simmons, Jane Doe, Craig, Landis and Wheelington*

143.    Plaintiffs re-allege and restate the preceding paragraphs of this Complaint as if fully set forth herein.

144.    The Estate, Michael Tobolowsky, Burk, Schoettmer, Hendricks, and Buck all had an economic interest in the Tobolowsky Enterprise.  The Estate used extortion to gain control over the enterprise operations, holding Betsy and Buck hostage to pay the excessive legal bills otherwise The Estate would stop bribing the judges and the illegally transferred properties would be returned to the rightful owner, Aubrey Family Trust.

145.    The Trust properties generate in excess of $300,000 annually and because Hendricks, the CPA, Buck, The Estate and Burk conspired to not pay any taxes for many years, it was economical for Buck to continue to pay The Estate rather than suffer through a legitimate accounting and reconciliation.  Within some reason, The Estate could demand any fees it desired, and The Estates control was the cause of the predicate act violations that injured Plaintiffs.

**COUNT III**
Violations of Section 1962(c) of RICO
*Plaintiffs Against The Estate, Michael Tobolowsky, Burk, Schoettmer, Judge Moye,*
*Judge Cosby, Hendricks, Buck, Betsy, Simmons, Jane Doe, Craig, Landis and Wheelington*

146.    Plaintiffs re-allege and restate the preceding paragraphs of this Complaint as if fully set forth herein.

147.    The Estate, Michael Tobolowsky, Burk, Schoettmer, Judge Moye, Hendricks, Buck, Betsy, Judge Cosby, Simmons, Jane Doe, Craig, Landis and Wheelington are each "persons" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of said enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c).

148.    The Estate's, Burk's, Schoettmer's, Judge Moye's, Hendricks', Buck's, and Betsy's, Michael Tobolowsky's, Schoettmer's, Judge Cosby's, Simmons', Jane Doe's, Craig's, Landis' and Wheelington's pattern of racketeering activity consisted of, but was not limited to,

38

the acts of extortion, mail and wire fraud, interstate transportation of stolen property, bank fraud, obstruction of justice, and bribery.

149.    The Estate, Michael Tobolowsky, Burk, Schoettmer, Judge Moye, Hendricks, Buck, Betsy, Judge Cosby, Simmons, Jane Doe, Craig, Landis and Wheelingtoneach agreed to join the conspiracy, agreed to commit fraud on the courts and the IRS, agreed to bribe or extort the judges and each was aware their activity was part of a pattern of racketeering.    The conspirators used the same pattern of activity with various real properties, various judges, and various clerks of the courts.

### COUNT IV
### Violations of Section 1962(d) of RICO
#### *Plaintiffs Against The Estate, Michael Tobolowsky, Burk, Schoettmer, Judge Moye, Judge Cosby, Hendricks, Buck, Betsy, Simmons, Jane Doe, Craig, Landis and Wheelington*

150.    Plaintiffs re-allege and restate the preceding paragraphs of this Complaint as if fully set forth herein.

151.    Burk, Schoettmer, Judge Moye, Hendricks, Buck, and Betsy conspired with The Estate while Schoettmer, Judge Cosby, Buck, Betsy, Simmons, Jane Doe, Craig, Landis and Wheelington conspired with Michael Tobolowsky to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d). In particular, Burk, Schoettmer, Judge Moye, Hendricks, Buck, and Betsy intended to further an endeavor of The Estate and Schoettmer, Judge Cosby, Buck, Betsy, Simmons, Jane Doe, Craig, Landis and Wheelington intended to further an endeavor of Michael Tobolowsky, which, if completed, would satisfy all of the elements of a substantive RICO criminal offense under 18 U.S.C. § 1962(c), and adopt the goal of furthering or facilitating the criminal endeavor, as evidenced by Burk's, Schoettmer's, Judge Moye's, Hendricks', Buck's, and Betsy's actions in furtherance of The Estate's violation of section

1962(c) and Schoettmer's, Judge Cosby's, Buck's, Betsy's, Simmons', Jane Doe's, Craig's, Landis' and Wheelington's actions in furtherance of Michael Tobolowsky's violation of section 1962(c).

152.    Plaintiffs were injured by The Estate's, Burk's, Schoettmer's, Judge Moye's, Hendricks', Buck's, and Betsy's, Michael Tobolowsky's, Schoettmer's, Judge Cosby's, Simmons', Jane Doe's, Craig's, Landis' and Wheelington's conspiracy and overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which consisted of, but were not limited to, the acts of extortion, mail and wire fraud, bank fraud, obstruction of justice, bribery, submitting a fraudulent accounting to the court and to the IRS.

153.    As a direct and proximate result of, and by reason of, the activities of The Estate, Burk, Schoettmer, Judge Moye, Hendricks, Buck, Betsy, Judge Cosby, Simmons, Jane Doe, Craig, Landis and Wheelington their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiff Aubrey, as Beneficiary of the Aubrey Family Trust, suffered damages to the extent that The Estate, Burk, Schoettmer, Judge Moye, Hendricks, Buck, and Betsy defrauded him of real property. Plaintiffs are, therefore, entitled to recover treble damages they sustained together with disgorgement of all profits of the Scheme, the cost of the suit, including costs, reasonable attorneys' fees, costs of investigation and reasonable experts' fees.

### COUNT V
### Harassment
### *Plaintiffs Against Michael Tobolowsky,*
### *Schoettmer, Judge Cosby, Craig, Landis and Wheelington*

154.    Plaintiffs repeat and incorporate by reference paragraphs xxxxx above as though fully set forth herein.

155.    Michael Tobolowsky, Schoettmer, Judge Cosby, Craig, Landis and Wheelington harassed Plaintiffs under Tex. Civ. Prac. & Rem. Code § 85.003(a)(1).

## COUNT VI
### Texas State Law Claim - Defamation Per Se
#### *Vodicka Against Michael Tobolowsky*

156.    Vodicka repeats and incorporates by reference paragraphs xxxxx above as though fully set forth herein.

157.    On June 28, 2019, Michael Tobolowsky filed an amended petition in Cause No. DC-19-05842 in the 193rd Judicial District Court Dallas County, Texas bringing Vodicka in as a defendant.   Michael Tobolowsky published statements in the complaint regarding Vodicka that were defamatory per se, stating that Vodicka admitted he was responsible for the capital murder of Ira Tobolowsky.  Michael Tobolowsky acted with malice or negligence regarding the truth of the statements.

158.    The direct and proximate result of Michael Tobolowsky's malicious per se statements is that Vodicka suffered severe injury including, but not limited to, personal humiliation, emotional distress, loss of reputations, medical expense, legal expense, loss of employment, lost earnings capacity, damage to character, criticism, dishonor, and condemnation.

## COUNT VII
### Texas State Law Claim - Defamation Per Quod
#### *Plaintiffs Against Michael Tobolowsky*

159.    Plaintiffs repeat and incorporate by reference paragraphs xxx above as though fully set forth herein.

160.    Following Plaintiffs' two requests on the City of Dallas under the Public Information Act, Michael Tobolowsky responded with two letters in opposition dated September 6, 2019, and October 22, 2019.  Both of the published letters in opposition to Plaintiffs' requests

were defamatory with regards to Plaintiffs and Michael Tobolowsky acted with malice or negligence regarding the truth of the statements.

161.   The direct and proximate result of Michael Tobolowsky's malicious per se statements is that Plaintiffs suffered severe injury including, but not limited to, personal humiliation, emotional distress, loss of reputations, medical expense, legal expense, loss of employment, lost earnings capacity, damage to character, criticism, dishonor, and condemnation.

**COUNT VIII**
**Texas State Law Claim - Malicious Prosecution**
*Vodicka Against Michael Tobolowsky*

162.   Vodicka repeats and incorporates by reference paragraphs xxxxx above as though fully set forth herein.

163.   On June 28, 2019, Michael Tobolowsky filed an amended petition in Cause No. DC-19-05842 in the 193rd Judicial District Court Dallas County, Texas bringing Vodicka in as a defendant.   Michael Tobolowsky brought a baseless claim against Vodicka for Intentional Infliction of Emotional Distress.

164.   Michael Tobolowsky had no basis to bring the claim against Vodicka and he acted with malice.

165.   On August 3, 2019, Vodicka filed his original answer, generally denying Michael Tobolowsky's fraudulent allegations.

166.   On August 5, 2019, Michael Tobolowsky filed a notice of nonsuit, dismissing the claim against Vodicka.

167.   The direct and proximate result of Michael Tobolowsky's malicious prosecution is that Vodicka suffered severe injury including, but not limited to, personal humiliation,

emotional distress, loss of reputations, medical expense, legal expense, loss of employment, lost earnings capacity, damage to character, criticism, dishonor, and condemnation.

## COUNT IX
### Texas State Law Claim - Abuse of Process
### *Vodicka Against Michael Tobolowsky*

168.    Vodicka repeats and incorporates by reference paragraphs xxxxx above as though fully set forth herein.

169.    On June 28, 2019, Michael Tobolowsky filed an amended petition in Cause No. DC-19-05842 in the 193rd Judicial District Court Dallas County, Texas bringing Vodicka in as a defendant.    Michael Tobolowsky brought a baseless claim against Vodicka for Intentional Infliction of Emotional Distress.

170.    Michael Tobolowsky had no basis to bring the claim against Vodicka.  In fact, he fabricated a defamatory per se statement stating that Vodicka admitted resoponsibility for the murder of Ira Tobolowsky.  Michael Tobolowsky acted with malice when he improperly brought the claim against Vodicka and less than five weeks later, he filed a notice of nonsuit dismissing the claim against Vodicka.

171.    Michael Tobolowsky's improper filing of the claim against Vodicka is yet another example of his misuse of the judicial process.  He had an ulterior motive or purpose for misusing the process and Vodicka sustained damage from the irregularity.

172.    The direct and proximate result of Michael Tobolowsky's abuse of process is that Vodicka suffered severe injury including, but not limited to, personal humiliation, emotional distress, loss of reputations, medical expense, legal expense, loss of employment, lost earnings capacity, damage to character, criticism, dishonor, and condemnation.

## DAMAGES

173.   As a result of the actions and/or omissions of Defendants described hereinabove,

Plaintiffs sustained damages including, but not limited to, the following:

a.   All reasonable and necessary Attorney's fees incurred by or on behalf of
Plaintiffs;

b.   All reasonable and necessary costs incurred in pursuit of this suit;

c.   Inconvenience;

d.   Public ridicule, scorn, and humiliation;

e.   Mental anguish in the past;

f.   Mental anguish in the future;

g.   Loss of reputation;

h.   Mental anguish;

i.   Emotional distress;

j.   Damage to character;

k.   Loss of earnings in the past;

l.   Loss of earning capacity which will, in all probability, be incurred in the
future;

m.   Physical pain and suffering in the past;

n.   Physical pain and suffering in the future;

o.   Physical impairment in the past;

p.   Physical impairment which, in all reasonable probability, will be suffered
in the future;

q.   Reasonable medical care and expenses in the past. These expenses were
incurred by Plaintiffs and such charges are reasonable and were usual and
customary charges for such services in Dallas County, Texas;

r.    Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future; and

s.    Treble damages for all economic and mental anguish damages awarded.

## EXEMPLARY DAMAGES

174.    Plaintiffs are also entitled to exemplary damages for the conduct set out in this Second Amended Complaint. All Defendants' conduct was extreme and outrageous and conducted with malice towards Plaintiffs as described above — all of which is incorporated by reference. Plaintiffs will provide clear and convincing evidence of Defendants' actual malice. In order to punish said Defendants for engaging in unlawful vicious attacks, and to deter such actions and/or omissions in the future, Plaintiffs intend to seek an award of actual damages based upon a preponderance of the evidence and an award for exemplary damages with a finding of malice.

## CONDITIONS PRECEDENT

175.    Plaintiffs reserve their rights to plead and prove the damages to which they are entitled to at the time of trial. All conditions precedent to Plaintiffs' recovery have been performed or have occurred.

## JURY DEMAND

176.    Plaintiffs request trial by jury in this above-styled action.

## PRAYER

Plaintiffs Steven B. Aubrey and Brian E. Vodicka respectfully urge that upon a final hearing of the cause, judgment be entered for the Plaintiffs be awarded compensatory damages against Defendants, jointly and severally, in an amount not less than $20 million and exemplary damages, to punish and deter Defendants, jointly and severally, in an amount not less than $20

million and to all other further relief to which Plaintiffs may be entitled in equity and in law and

Grant relief for an immediate, preliminary injunction and permanent injunction enjoining All

Defendants from hosting, posting, or in any manner publishing or disseminating, whether under

its legal identity or under any aliases, whether now created or created in the future, any

defamatory or injurious information regarding Plaintiffs.

Respectfully submitted,

By: _____
Steven B. Aubrey, Pro Se
2601 NW 3rd Ave
Wilton Manors, FL 33311
Telephone: (512) 666-8004
defamationperse@gmail.com

By: _____
Brian E. Vodicka, Pro Se
2601 NW 3rd Ave
Wilton Manors, FL 33311
Telephone: (954) 716-9375
defamationperse@gmail.com

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Aubrey, Steven, B.
Aubrey, Steven, B, as Beneficiary of the
Aubrey Family Trust,
Vodicka, Brian, E.

## DEFENDANTS

The Estate of Ira Tobolowsky,
Tobolowsky, Michael, B.
Schoettmer, Stephen, C.
Burk, Faith, G., et. al

**(b)** County of Residence of First Listed Plaintiff    Broward County, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Dallas County, TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

RECEIVED
NOV 22 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

3:19CV-2792S

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
       Plaintiff
- ☒ 3  Federal Question
       *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
       Defendant
- ☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment
      & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted
      Student Loans
      (Excludes Veterans)
- ☐ 153 Recovery of Overpayment
      of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product
      Liability
- ☐ 320 Assault, Libel &
      Slander
- ☐ 330 Federal Employers'
      Liability
- ☐ 340 Marine
- ☐ 345 Marine Product
      Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle
      Product Liability
- ☐ 360 Other Personal
      Injury
- ☐ 362 Personal Injury -
      Medical Malpractice

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/
      Accommodations
- ☐ 445 Amer. w/Disabilities -
      Employment
- ☐ 446 Amer. w/Disabilities -
      Other
- ☐ 448 Education

PERSONAL INJURY
- ☐ 365 Personal Injury -
      Product Liability
- ☐ 367 Health Care/
      Pharmaceutical
      Personal Injury
      Product Liability
- ☐ 368 Asbestos Personal
      Injury Product
      Liability
PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal
      Property Damage
- ☐ 385 Property Damage
      Product Liability

**PRISONER PETITIONS**
Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate
      Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee -
      Conditions of
      Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure
      of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards
      Act
- ☐ 720 Labor/Management
      Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical
      Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement
      Income Security Act

**IMMIGRATION**
- ☒ 462 Naturalization Application
- ☐ 465 Other Immigration
      Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal
      28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated
      New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff
      or Defendant)
- ☐ 871 IRS—Third Party
      26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC
      3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☒ 470 Racketeer Influenced and
      Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer
      Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/
      Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information
      Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure
      Act/Review or Appeal of
      Agency Decision
- ☐ 950 Constitutionality of
      State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original
      Proceeding
- ☐ 2 Removed from
      State Court
- ☐ 3 Remanded from
      Appellate Court
- ☐ 4 Reinstated or
      Reopened
- ☐ 5 Transferred from
      Another District
      *(specify)*
- ☐ 6 Multidistrict
      Litigation -
      Transfer
- ☐ 8 Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332, 18 U.S.C. § 1961, 28 U.S.C. § 1367
Brief description of cause:
Plaintiffs allege RICO violations under Section 1962 and state law claims for defamation per se, malicious prosecuti

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
   UNDER RULE 23, F.R.Cv.P.

DEMAND $
40,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE                          DOCKET NUMBER

DATE   11/21/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE





RECEIVED
NOV 2 2 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS



Express