IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN B. AUBREY, INDIVIDUALLY, <br> STEVEN B. AUBREY, AS BENEFICIARY <br> OF THE AUBREY FAMILY TRUST, AND <br> BRIAN E. VODICKA, <br> PLAINTIFFS, <br> V. <br> <br> THE ESTATE OF IRA TOBOLOWSKY, <br> MICHAEL B. TOBOLOWSKY, FAITH G. <br> BURK, STEPHEN SCHOETTMER, DAVID <br> P. HENDRICKS, RICHARD B. AUBREY, <br> JR., BETSY S. AUBREY, AS <br> INDEPENDENT EXECUTRIX OF THE <br> ESTATE OF RICHARD BUCK AUBREY, <br> DECEASED, RACHEL ANN CRAIG, <br> ROBIN L. LANDIS, AND JACKIE K. <br> WHEELINGTON, <br> DEFENDANTS. | § § § § § § § § § § § § § § § § § § § § | CASE No. 3:19-CV-2792-N-BK |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) and *Special Order 3*, this case was referred to the United States magistrate judge for pretrial management. The Court now considers the *Motions to Dismiss* filed by Defendants Estate of Ira Tobolowsky (the "Estate"), Michael B. Tobolowsky ("Michael"), and David P. Hendricks. Doc. 72; Doc. 75; Doc. 76. As detailed herein, the motions should be **GRANTED**.

**I.   BACKGROUND**

This case stems from protracted litigation which arose in relation to the probate of an estate. In the operative amended complaint, *pro se* Plaintiffs Steven B. Aubrey ("Steven") and

his partner Brian Vodicka ("Vodicka") sued nearly a dozen individuals as well as the estate of another alleged wrongdoer.[1]  The gist of the operative complaint is that Steven's mother, Defendant Betsy Aubrey ("Betsy"), and certain other Defendants committed various wrongful acts in connection with the probate of the estate and administration of the Aubrey Family Trust (the "Trust") established by Steven's father.  Doc. 37 *passim*.  Commencing in 2014, the now-deceased Ira Tobolowsky ("Ira") represented Betsy in her ongoing dispute with Steven during which he allegedly engaged in all manner of illicit and illegal conduct.  *Doc. 37 at 14-15 & passim*.

In July 2015, Ira sued Plaintiffs in a separate state court action for defamation based on statements they made during Ira's representation of Betsy.  Doc. 37 at 28-30.  In 2016, Ira died in a suspicious fire, and Plaintiffs got swept up in the resulting investigation, during which some Defendants — particularly Steven Schoettmer and Michael — allegedly falsely accused them of the crime and harassed and defamed them on Twitter.  Doc. 37 at 3-4; Doc. 37 at 34, 39.  In the meantime, Michael continued the defamation suit on behalf of his deceased father Ira and eventually obtained an award of $5.5 million in damages against Steven.  Doc. 37 at 38.  Plaintiffs assert this judgment was obtained through bribery or threats against several state court judges, one of whom ultimately imposed monetary sanctions on Steven and designated him a vexatious litigant.  Doc. 37 at 27-28, 30-31, 35-36, 38, 52.

In the instant federal complaint, Plaintiffs jointly assert that Defendants and numerous non-parties violated the Racketeer Influenced and Corrupt Organization Act ("RICO") in connection with Betsy's and the Tobolowskys' litigation against Plaintiffs.  *See* Doc. 37 at 49-50

---

[1] The Court previously dismissed Plaintiffs' claims against the remaining Defendants with prejudice and those claims will not be addressed further.  Doc. 68; Doc. 85; Doc. 90; Doc. 91.

(alleging Plaintiffs were injured by the racketeering activities of the "Tobolowsky Enterprise" which also involved numerous state court judges, court personnel, and unnamed attorneys); Doc. 37 at 22-23, 30, 36, 44, 53-54, 58-61 (alleging Ira and Michael engaged in ex parte communications with various state court judges while litigating claims involving Plaintiffs); Doc. 37 at 58, 78-79 (Michael committed extortion by threatening Steven with criminal charges in an unrelated suit he had filed against Steven); Doc. 37 at 64-65 (Ira, Michael, and Hendricks committed bank fraud by misrepresenting the ownership of Trust properties); Doc. 37 at 13, 65 (Michael and Ira bribed various state court judges during the parties' litigation); Doc. 37 at 49-50, 65 (Ira, Michael, and Hendricks engaged in mail and wire fraud by fronting money secured by collateral they did not own to defend an unrelated lawsuit filed against a company of which Ira was vice president); Doc. 37 at 55-56, 66 ("Applicable Defendants" obstructed justice by altering or concealing records to prevent their use in official proceedings, and Michael wrongfully sued the City of Dallas to obtain records of the criminal investigation of his father); Doc. 37 at 12, 66, 74 (Hendricks and Ira conspired to file false tax returns on behalf of the Trust and Defendants stole money from the Trust and transported it in interstate commerce); Doc. 37 at 67 (Michael illegally obtained Plaintiffs' communications records during Ira's defamation case against them); Doc. 37 at 69-71 (Michael stalked Plaintiffs and invaded their privacy by using Twitter to defame Plaintiffs and publish their address); Doc. 37 at 71-73, 80-81 (Michael defamed Plaintiffs by accusing them of being the sole suspects in Ira's death in two letters to the state Office of the Attorney General and in a suit he filed against another individual); Doc. 37 at 18 n.10, 26 & Doc. 37 at 76-78 (Ira, Michael, and Hendricks aided and abetted breach of the fiduciary duties owed to Betsy by directing her to ignore the law and excessively billing her for their services); Doc. 37 at 82-83 (Michael abused process by filing a state bar grievance against

Vodicka in connection with litigation between Vodicka and Ira); Doc. 37 at 84-86 (Michael intentionally inflicted emotional distress upon and maliciously prosecuted Vodicka by filing suit against Vodicka alleging he had admitted murdering Ira); and Doc. 37 at 86-87 (Michael committed fraud on the court in litigating Ira's defamation case against Plaintiffs). The remainder of Plaintiffs' complaint consists of titles of various causes of action but little substance, and the allegations appear to relate to parties not named in the present suit. Doc. 37 at 86-91. Plaintiffs seek compensatory and exemplary damages totaling $40 million against all Defendants jointly and severally. Doc. 37 at 94. The motions *sub judice* followed.

## II. APPLICABLE LAW

A plaintiff fails to state a claim for relief under Rule 12(b)(6) when the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice. Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011). "[U]nless the pleadings on their face reveal beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief," a Rule 12(b)(6) dismissal is inappropriate. Garrett v. Commonwealth Mortgage Corp., 938 F.2d 591, 594 (5th Cir. 1991).

## III. ANALYSIS

### A. Claims Against Hendricks

Plaintiffs named attorney/certified public accountant Hendricks in the complaint for RICO violations and fraud, asserting that Hendricks (1) filed 13 years of false tax returns for Betsy, Steven's brother Buck, and the Trust, dating from 2007 until the filing of the amended complaint, and (2) conducted a fraudulent accounting for Betsy in or around September 2014. Doc. 37 at 10-12, 18-19; Doc. 37 at 61, 65-66, 75-76.  Hendricks moves to dismiss Plaintiffs' complaint on several bases, but the Court need only address one, namely that the claims against him are barred by res judicata because the same issues at stake here were litigated and decided in state court.  Doc. 76 at 16-17 (citing *Aubrey v. Aubrey*, Cause No. DC-15-11685, 14th District Court, Dallas County (2015), *aff'd* 523 S.W.3d 299, 301 (Tex. App.—Dallas 2017)).

Because the prior judgment in question was issued by a Texas state court, this Court must give that judgment the preclusive effect it would be given under Texas law.  *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (quotation omitted).  In Texas court, a party seeking to have an action dismissed based on the doctrine of res judicata must show (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) that the same parties, or those in privity with them, were involved in the prior case; and (3) that the second action is based on the same claims that were — or could have been — raised in the first action.  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992) ("The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties . . . not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.").

In September 2015, Steven sued Betsy alleging, *inter alia*, that Hendricks assisted Ira in tricking Betsy into three "sham" transactions in June 2013 relating to certain Estate property. *See Aubrey v. Aubrey*, 523 S.W.3d 299, 302 (Tex. App.—Dallas 2017). Specifically, the suit addressed Hendricks' purported involvement in a conspiracy with Michael to "fraudulently transfer a Trust asset." *Id*. at 303. In March 2016, the state trial court entered a final judgment *nunc pro tunc* "declaring [Steven] a vexatious litigant, dismissing the lawsuit with prejudice, and granting Betsy sanctions against [Steven]." *Id.* at 301. The court additionally barred Steven from filing another lawsuit against Betsy, the Trust, Ira, Tobolowsky & Burk PC, Hendricks, Hendricks PLLC, Faith Burk, Richard Buck Aubrey, Jr., and Aubrey Family, LLC without first obtaining leave of court from the Dallas County administrative judge. *Id.* at 308 n.6.

The appellate court affirmed the trial court's order declaring Steven to be a vexatious litigant. *Id.* at 318-19 (noting seven prior suits Steven had filed against Betsy and affirming trial court's order finding that Steven's current suit was "brought for improper purposes, including to harass, to cause unnecessary delay, and to needlessly increase the cost of litigation."); *see also Vodicka v. A.H. Belo Corp.*, No. 05-17-00728-CV, 2018 WL 3301592, at *10-11 (Tex. App.—Dallas July 5, 2018) (noting that "[t]he [trial] Court further concludes that sanctions should be awarded against [Steven and Vodicka] in the amount of $1,000. The Court finds that the Petition filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of [Texas] rule of civil procedure 13.").

As an initial matter, Plaintiffs do not respond to Hendricks' res judicata argument and have thus forfeited any argument on that point. *Biziko v. Van Horne*, 981 F.3d 418, 420 n.1 (5th Cir. 2020). Even considering the merits, however, the bases and nucleus of operative facts on which Plaintiffs hinge their claims against Hendricks are the same as those which were litigated,

decided, and confirmed on appeal in Texas state court in *Aubrey*, 523 S.W.3d at 301. As a result, Plaintiffs' claims against Hendricks are barred by the doctrine of res judicata. *Amstadt*, 919 S.W.2d at 652.

### B. Claims Against Michael

Almost all of Plaintiffs' claims against Michael relate to his representation of Betsy and/or the Estate in litigation in which Plaintiffs were involved in one manner or another. *See supra* at 3-4. Yet the Texas Supreme Court recently stated that "as a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C*, 595 S.W. 3d 651, 657 (Tex. 2020) (quoting *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). The attorney immunity doctrine "stems from the broad declaration that attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages" to non-clients. *Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 346 (5th Cir. 2016) (quoting *Cantey Hanger, LLP*, 467 S.W.3d at 481 (internal quotation marks omitted)). The attorney immunity inquiry "focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018) (emphasis in original). Accordingly, "a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful." *Id.* As Michael argues, the majority of Plaintiffs' claims are thus barred by the attorney immunity doctrine and should be dismissed.[2]  *See Troice*, 816 F.3d at 346 (noting that the

---

[2] All of the claims against Ira's Estate are barred by the attorney immunity doctrine as well and should be dismissed with prejudice because the allegations at issue were tied to Ira's role as an attorney either when he represented Betsy or when he was litigating directly against Steven. *See*

attorney immunity doctrine "is properly characterized as a true immunity from suit," not merely a defense against liability).

That leaves only Plaintiffs' stalking claim, a single defamation *per se* claim, and an invasion of privacy claim. *See* Doc. 37 at 69-71 (Michael stalked Plaintiffs and invaded their privacy by publishing their home address on Twitter); Doc. 37 at 71-73 (Michael defamed Plaintiffs in September and October 2019 by accusing them of being the sole suspects in Ira's death in two letters to the Texas Office of the Attorney General's Open Records Division).

Michael alleges that (1) Plaintiffs' stalking claim fails because the Florida statute they rely on is criminal in nature and does not permit a civil action, Doc. 75 at 27; (2) Plaintiffs' invasion of privacy claim is meritless because their home address is a matter of public record, Doc. 75 at 28; and (3) Plaintiffs cannot state a claim for defamation *per se* because the alleged statement did not "injure a person in his office, profession, or occupation," Doc. 75 at 31-32.

Upon consideration, the Court concludes that each Plaintiffs' remaining claims against Michael should be dismissed. First, Plaintiffs do not respond to Michael's assertion that they cannot bring a private action for stalking under the applicable Florida criminal statute. *See* FLA. STAT. § 784.048. Accordingly, they have abandoned their stalking claim. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). Second, their invasion of privacy claim is premised upon Michael's allegedly posting their home address on Twitter in February 2017. Doc. 37 at 71. That information, however, was already in the public domain because Plaintiffs had used it in conjunction with other publicly filed cases. *See, e.g.*, *Aubrey v. Aubrey*, Cause No.

---

Doc. 37 at 12-13, 22-23, 30, 36, 44, 53-56, 58-61, 66, 74, 78-79. Those claims thus need not be discussed separately.

DC-15-08315, 14th District Court, Dallas County; *see also In re Johnson*, 599 S.W.3d 311, 311 (Tex.App.—Dallas 2020) (taking judicial notice of trial court's online public docket sheets).

Lastly, Plaintiffs fail to state a claim for defamation *per se*. To properly state that claim, Plaintiffs must plead (1) the publication of a false statement of fact to a third party, (2) that defamed the plaintiff, (3) negligently if the individual is not a public figure, and (4) the defamatory statement caused damage unless the statement is defamatory *per se*. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017). As pertinent here, a statement constitutes defamation *per se* if it "injures a person in his office, profession, or occupation." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex.App.–Austin 2007).

Plaintiffs allege in the operative complaint that as a result of Michael's defamatory statements, they "suffered severe injury including but not limited to personal humiliation, emotional distress, loss of reputations, medical expense, legal expense, loss of employment, lost earnings capacity, damage to character, criticism, dishonor, and condemnation." Doc. 37 at 73. In their original complaint, however, Plaintiffs claimed that Vodicka "has been a disabled individual" at all relevant times, "no longer has a part-time job and has been unable to find one," and "lives off of his monthly Social Security payments." Doc. 3 at 7, 9. The original complaint further alleges that Steven "became Vodicka's care-giver in December 1994" and "chose a lifetime of service for a partner who continuously takes . . . debilitating medications to combat his life-threatening disease." Doc. 3 at 10.

Plaintiffs omitted from their amended complaint the admissions regarding their employment status. Nevertheless, "[n]ormally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). In other words, while

9

admissions in a prior complaint may "lose their binding force," they nevertheless retain value "as evidentiary admissions." *Id.* at 1396 n.5; *see also* 6 Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 1476 (3d ed. 2018) (noting that "allegations in a pleading that has been withdrawn may be allowed into evidence as an admission of the party."). Accordingly, the Court takes note of the admissions in Plaintiffs' original complaint with respect to their lack of a profession or occupation. *Sanders v. U. of Texas Pan Am.*, 776 Fed. Appx. 835, 837-38 (5th Cir. 2019) (per curiam) (upholding grant of motion to dismiss where district court took note of factual admission in original complaint which plaintiff omitted from amended complaint); *see also Meadows v. City of Crowley*, 731 Fed. Appx. 317, 318 n.1 (5th Cir. 2018) (stating that "we are aware of no rule that forbids us from taking note of [plaintiff's original complaint]" in the context of a motion to dismiss); *Feagin v. Travis Cty. Sheriff's Office*, No. A-11-CA-702-LY, 2012 WL 5354624, at *5 (W.D. Tex. Oct. 26, 2012) (evaluating a party's amended complaint against their original complaint). In light of Plaintiffs' allegations in their original complaint that they have both been without employment during all relevant times, their defamation *per se* claim should be dismissed. *See Tex. Disposal Sys. Landfill, Inc.*, 219 S.W.3d at 581.

## IV.   LEAVE TO AMEND

"As a general rule, a court should not dismiss a *pro se* complaint without affording the plaintiff the opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, the court is not required to grant leave to amend "if the plaintiff has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767-768 (5th Cir. 2009)). Here, Plaintiffs have previously amended their complaint, and no further amendment can overcome the fatal infirmities discussed above. Thus, granting additional leave to amend would be futile and only cause needless delay.

## V. SANCTIONS

As noted above, Steven has filed at least two cases in which he has been sanctioned for his vexatious litigation practices.  See *Aubrey*, 523 S.W.3d at 318-19 (noting seven prior suits filed by Steven against Betsy and affirming trial court's order finding that Steven's current suit was "brought for improper purposes, including to harass, to cause unnecessary delay, and to needlessly increase the cost of litigation" and upholding ban on litigation against numerous defendants); *see also Vodicka*, 2018 WL 3301592, at *10-11 (noting that "[t]he [trial] Court further concludes that sanctions should be awarded against [Steven and Vodicka] in the amount of $1,000.  The Court finds that the Complaint filed in this case was brought in bad faith, is groundless and brought for the purpose of harassment in violation of [Texas] rule of civil procedure 13.").  In view of these facts, Steven should be ordered to show cause why he should not be barred from filing future actions in this Court against Defendants involving the same subject matter.

## VI. CONCLUSION

For the reasons stated herein, Defendants' motions to dismiss, Doc. 72, Doc. 75 & Doc. 76, should be **GRANTED**, the claims against them should be **DISMISSED WITH PREJUDICE**, and this case should be **CLOSED**.

**SO RECOMMENDED** on September 7, 2021.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).